Jeffrey Weisen,                           Case No.: 0:19-CV-02624 (JNE/ECW)

        Plaintiff,

v.

Northern Tier Retail LLC d/b/a Speedway,

        Defendant.

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

Like its companion case, *Weisen v. Northern Tier Retail LLC d/b/a Speedway and Agree Bloomington MN, LLC*, Case No. 19-CV-2884 (JNE/ECW), this case is more of the same. Plaintiff Jeffrey Weisen's claims under the Americans With Disabilities Act ("ADA") fail as a matter of law because he cannot establish that he actually encountered an architectural barrier. Even if he had actually encountered the barriers in question, Mr. Weisen's claims still fail because he cannot establish an intent to return to the premises. And even if Mr. Weisen could establish standing to bring this action, his claims still fail as a matter of law because any alleged violation has been remediated by Defendant Northern Tier Retail LLC d/b/a Speedway ("Speedway") and, therefore, are now moot. Speedway now moves for summary judgment as a result.

Each of these three bases is sufficient for the Court to grant summary judgment in favor of Speedway. The combination of the three, however, strongly warrants this result.

**II.     The Cottage Grove Speedway.**[2]

**A.     Mr. Weisen did not encounter any violations at the Cottage Grove Speedway.**

As with the Bloomington Speedway, Mr. Weisen has filed so many ADA lawsuits that he was not even aware of whether this case was ongoing during his deposition:

Q:     The Cottage Grove case –

A:     I don't remember.

Q:     The Cottage Grove case, is that case still ongoing?

A:     **Same answer.  I couldn't tell you.**

(*See* First Deposition of Jeffrey Weisen ("J. Weisen Depo.") at 56:15-18) (emphasis added).  Similarly, he does not remember the date he visited the Cottage Grove Speedway in question, not even by month or year.  (Second Deposition of Jeffrey Weisen ("2nd J. Weisen Depo.") at 307:15–308:9.)[3]

His wife, Barbara Weisen, testified that she and her husband stopped at the Cottage Grove Speedway in "July or August of 2019" on their way to the casino.  (Deposition of

---

[1] Out of respect for the Court, Speedway hereby incorporates by reference Background Section I of Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment in Case No. 19-CV-2884 (JNE/ECW), Dkt. 48.  This incorporation is included in Speedway's Rule 7.1 certification.

[2] The full transcript of the first deposition of Jeffrey Weisen is provided as Exhibit A to the Olson Declaration filed herewith.

[3] The transcript of the second deposition of Jeffrey Weisen is provided as Exhibit B to the Olson Declaration filed herewith.

Barbara Weisen ("B. Weisen Depo.") at 12:10-20.)[4]  She explained that the purpose of the stop was so that she could use the restroom and grab coffee.  (B. Weisen Depo. at 25:11-14.)  Because Mr. Weisen was not planning to exit the vehicle and enter the store, Ms. Weisen did not park in a disabled parking space.  (B. Weisen Depo. at 25:18-19; 2nd J. Weisen Depo. at 309:17-20.)  Mr. Weisen did not get out of the car.  (B. Weisen Depo. at 25:18-19; 2nd J. Weisen Depo. at 309:17-20.)  He admits that he did not encounter any of the interior violations he alleges.  (2nd J. Weisen Depo. at 310:13–311:5.)

Despite the fact that Mr. Weisen was not planning to get out of the vehicle and enter the store, Ms. Weisen surveyed the interior for potential ADA violations, including the men's restroom.  (*See* B. Weisen Depo., 26:25–28:19.)  In total, Ms. Weisen testified that it took her 20 minutes to use the restroom, buy coffee, and "observe."  (B. Weisen Depo. at 49:11-17.)  She admits that she did not have a tape measure and did not take any measurements inside the store, but was able to assess certain violations because "the top of my chest area" is 48-inches tall.  (B. Weisen Depo. at 27:9-25.)  She likewise admits that she had no tool to measure slopes in the exterior parking lot; instead, she uses a less exact method: "My mind.  That's it.  I could see it.  My eyes and my ability to think is what made me realize that" the supposed violations existed.  (*See* B. Weisen Depo. at 45:4-7.)  Ms. Weisen admits that she was aware of the potential for Mr. Weisen to bring a lawsuit related to ADA violations while she was in the Cottage Grove Speedway, which she explained "was all new dialogue in our household."  (*See* B. Weisen Depo. at 49:3–10.)

---

[4] The full transcript of the deposition of Barbara Weisen is provided as Exhibit C to the Olson Declaration filed herewith.

When she was finished surveying the interior for violations, Ms. Weisen paid for the coffees but did not inform the Speedway employees of any suspected ADA violations because "they are an employee that gets paid an hourly wage" and she assumed "[t]hey really . . . don't want to hear it." (*See* B. Weisen Depo. at 35:5-16.) Instead, she returned the car and told Mr. Weisen about the violations she observed. (B. Weisen Depo. at 35:17-22.) The Weisens then discussed bringing a lawsuit against Speedway. (*See* 2nd J. Weisen Depo. at 311:12-15.) Mr. Weisen next contacted Mr. Seifert to start the suit, as he typically does:

> Q: And what did you do next?
>
> A: I talked to Craig at that time.
>
> Q: Now, just so I understand how the process works here, for all the complaints that we've talked about, when you notice violations, you report them to Craig?
>
> A: Correct.
>
> Q: And then how long does it take for Craig to get a complaint back?
>
> A: It depends how busy he is. It's usually pretty quick.

(2nd J. Weisen Depo. at 311:16–312:16.) Mr. Weisen reported the suspected violations to Mr. Seifert, who came over to the Weisens' house the next day to discuss. (*See* B. Weisen Depo. at 42:16–43:10.)

**B.** **Plaintiff spoliates evidence of his supposed visit.**

On August 8, 2019, Plaintiff's counsel reached out to counsel for Speedway with notice of three new cases against Speedway, including this case involving the Cottage Grove Speedway. (Declaration of Erin Moosbrugger ("Moosbrugger Dec."), Ex. A.) On

August 12, 2019, in-house counsel for Speedway responded by requesting the date and time that Plaintiff visited the Cottage Grove Speedway.  (*See id.*)  She explained:

> In asking you to provide this information to me, <u>I am seeking to preserve evidence relevant to this claim</u> and to be able to adequately assess your clients' claims.  The only way for me to preserve this evidence or assess the claim is to gather information from you and your clients regarding the date and time of their visits—this information is information *only* known to you and your clients.

(*Id.*) (emphasis in original.)  Plaintiff's counsel responded that the visit occurred "in July or August of **2018**."  (*Id.*) (emphasis added.)  Speedway's in-house counsel clarified that the "date and a time" was needed to preserve the surveillance video and asserted that a failure to provide such information would be "highly prejudicial to our possible defenses and therefore, akin to spoliation."  (*Id.*)  Plaintiff's counsel did not provide the requested information.  (Moosbrugger Dec. at ¶ 3.)  Even without the date and time, Speedway took the steps to check its surveillance system, which only went back approximately three months to May 2, 2019—a date nearly ten months after the date on which Plaintiff's counsel represented his client came to the Cottage Grove Speedway.[5]  (*Id.* at ¶ 3.)

Mr. Weisen served his complaint on September 11, 2019.  (Dkt. 1-1.)  In his Complaint, Mr. Weisen simply alleged that he visited the Cottage Grove Speedway "[w]ithin the applicable limitations period."  (*Id.* at ¶ 21.)  Speedway first learned that Plaintiff came to the Cottage Grove Speedway in July or August **2019** at Mrs. Weisen's

---

[5] Although it varies from store to store depending on a variety of factors including type of system and number of cameras and store hours, Speedway's surveillance footage at the Cottage Grove Speedway is stored for approximately three months before it automatically overwrites the earliest footage.  (Moosbrugger Dec. at ¶ 3.)

deposition, taken on September 8, 2020. (Moosbrugger Dec. at ¶ 4.) This was an entirely different year than the date initially represented by Plaintiff's counsel. (*Id.*) Unfortunately, by that time footage from July or August 2019 had been long-overwritten on Cottage Grove Speedway's surveillance system. (*Id.*) Because Plaintiff's counsel both refused to provide Speedway with the date and time that Mr. Weisen visited the Cottage Grove Speedway when requested by Speedway's in-house counsel and eventually misrepresented the year of Mr. Weisen's visit, Speedway was prevented from preserving the surveillance video of the date in question. (*See id.* at ¶ 5.)

## D.    Speedway remediates any alleged violations.

Setting aside its reservations about whether Mr. Weisen actually encountered any barriers as he alleges, Speedway went about remediating violations alleged by Mr. Weisen. Speedway reconstructed its sidewalk and re-paved its disabled parking space and access aisle. (Declaration of Daniel R. Olson ("Olson Dec."), Ex. D at p. 7.) Speedway's expert, Ms. Julee Quarve-Peterson, opines that the renovations remediated any alleged violation with respect to the parking spaces and sidewalk. (Olson Dec., Ex. E at pp. 3–6.) She also opines that the gas pumps that were installed in 2008 are in compliance with the 1991 "safe harbor" standards. (*See id.* at p. 7.) She further opines that the interior violations alleged have either been remedied or did not exist in the first place.[6] (*Id.* at pp. 8–10.)

---

[6] With respect to the clearance requirements of the bathroom, Ms. Quarve-Peterson noted that the Cottage Grove Speedway was constructed in 1975. (Olson Dec., Ex. E at *9.) In addition to pre-dating the ADA, the bathroom also complies with the 1991 safe harbor standards. (*See* Declaration of Julee Quarve-Peterson ("Quarve-Peterson Dec.") at ¶ 8.)

Speedway now moves for summary judgment based on the record establishing that Mr. Weisen did not actually encounter any barriers and, alternatively, because any existing barriers have been remediated.

## ANALYSIS

### I.    Legal standard.

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." *Commercial Union Ins. Co. v. Schmidt*, 967 F.2d 270, 271 (8th Cir. 1992); Fed. R. Civ. P. 56(a). The moving party bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden may be satisfied by presenting specific evidence on a particular issue or by indicating "an absence of evidence to support the non-moving party's case." *Id*. at 325. "In designating specific facts, the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgement because Rule 56(c) requires that there be no *genuine* issue of *material* fact." *Schmidt*, 967 F.2d at 271–72 (internal quotations omitted).

Once the movant has met this burden, the non-movant cannot simply rest on the bare allegations of the pleadings; rather, that party must set forth specific, admissible, material facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). If a plaintiff cannot support

each essential element of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322–23.

## II. The Court should grant summary judgment in favor of Speedway because Mr. Weisen lacks standing to assert his purported claims.

First, Mr. Weisen's claims fail as a matter of law because he cannot establish standing. A plaintiff's standing to sue "is the threshold question in every federal case, determining the power of the court to entertain the suit." *Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir. 2000). To show standing, a plaintiff has the burden to prove: (1) that he suffered an injury-in-fact; (2) a causal relationship between the challenged conduct and the injury; and (3) that the injury will be redressed by a favorable decision. *Id.* Here, Mr. Weisen cannot show that he suffered an injury-in-fact.

### A. Mr. Weisen has not suffered an injury-in-fact.

Mr. Weisen cannot demonstrate an injury-in-fact because he did not actually encounter any of the barriers in question by his own admission. An injury-in-fact must be more than a "generalized grievance." *U.S. v. Hays*, 515 U.S. 737, 743 (1995). Indeed, even alleging an unspecific injury is insufficient. *ARRM v. Piper*, 367 F.Supp.3d 944, 951 (D. Minn. 2019) ("Allegations of a possible future injury are insufficient to confer standing."). Nor can a plaintiff establish standing through pleading a "speculative chain of possibilities." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013). Instead, an injury-in-fact "must be concrete, particularized, and actual or imminent." *Id.* at 409 (quotations omitted). Notably, "[t]he purpose of the imminence requirement is to ensure that the

alleged injury is not too speculative for Article III purposes – that the injury is certainly impending." *ARRM*, 367 F. Supp. 3d at 951.

The same holds true for public accommodation claims under Title III of the ADA. *See, e.g., Meagley v. City of Little Rock*, 639 F.3d 384, 391 (8th Cir. 2011) (dismissing public accommodation claim because plaintiff failed to establish an injury-in-fact); *Steger*, 228 F.3d at 893. While a plaintiff is not required to visit a building containing known barriers that the owner has no intention of fixing, he or she must prove knowledge of the barriers and that he or she would visit the building in the imminent future but for those barriers. *Steger*, 228 F.3d at 892.

In his Complaint, Plaintiff asserts that he visited Speedway's Cottage Grove location at some time "[w]ithin the applicable limitations period" and that he personally encountered eleven specific barriers that "hindered his ability to patronize the business." (Dkt. 1-1, p. 11, ¶ 20.) When asked to articulate the exact date that Mr. Weisen patronized Speedway's Cottage Grove location and first noticed the eleven purported violations, Mr. Weisen was unable to articulate the date—or even the year. Mr. Weisen's inability to recall when he supposedly encountered the alleged barriers underscores his inability to demonstrate an injury-in-fact.

But more importantly, Mr. Weisen admits that he did not encounter any of the alleged violations. He was not planning on entering the Cottage Grove Speedway when he and his wife arrived at whatever day they claim gave rise to this Complaint. As a result, his wife parked in a regular parking space—not a disabled parking space. He did not get

out of the car and he admits that he did not encounter any of the interior violations he is alleging.

More importantly, testimony by both Mr. Weisen and his wife confirms that the allegations in the Complaint were false—Mr. Weisen never encountered any of the barriers alleged in his Complaint. Mr. Weisen did not go inside the store. He was not even planning on entering the Cottage Grove Speedway when he and his wife arrived at whatever day they claim gave rise to this Complaint. In fact, Ms. Weisen did not even park their car in the designated disabled parking space because Mr. Weisen was not planning to get out of the car or go into the store, so she parked in a regular parking space—not a disabled parking space. Mr. Weisen proceeded to remain in the vehicle as planned and admits that he did not encounter any of the interior violations he alleges in the Complaint.

Because Mr. Weisen never entered the store, never attempted to enter the store, never parked in a designated disabled parking space, and never even attempted to get out of his vehicle, he has not suffered an injury in fact. *See Hillesheim v. Holiday Stationstores, Inc.*, 900 F.3d 1007, 1010 (8th Cir. 2018) ("Alleging bare violations of the ADA without evidence of an actual injury is insufficient to establish Article III standing."); *see also Smith v. RW's Bierstube, Inc.*, No. 17-CV-1866 (PJS/HB), 2019 WL 3304919, at *5 (D. Minn. July 23, 2019) ("[T]o establish 'actual injury' in this context, a plaintiff must intend to enter or otherwise access the business but be hindered from doing so by the architectural barrier."). As such, Mr. Weisen has no direct knowledge of any barriers at Speedway's Cottage Grove location and, therefore, lacks standing to bring this lawsuit.

**B.  Mr. Weisen cannot demonstrate that he intends to return to the Cottage Grove Speedway.**

But even if Mr. Weisen had actually exited the vehicle and encountered the barriers he alleges, his claims still fail because he cannot demonstrate a legitimate intent to return. When determining whether a plaintiff intends to return to a property that contains architectural barriers, courts consider factors such as "(1) the plaintiff's proximity to the accommodation; (2) the frequency of plaintiff's nearby travel; (3) the plaintiff's past patronage; and (4) the definiteness of plaintiff's plans to return." *Sawczyn v. BMO Harris Bank Nat. Ass'n*, 8 F.Supp.3d 1108, 1112 (D. Minn. 2014).  The United States Supreme Court has stated that "'some day' intentions—without any description of concrete plan, or indeed even any specification of *when* the some day will be—do not support a finding of 'actual or imminent' injury that our cases require." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992).

Mr. Weisen alleged in his Complaint that he lived near Speedway's Cottage Grove location and that he intended to patronize the store in the future.  (ECF No. 1-1, p. 14, ¶ 30.)  However, since Mr. Weisen initiated this litigation, he moved to St. Cloud, Minnesota. (2nd J. Weisen Depo., 9:3–4.)  Speedway's Cottage Grove location is approximately 86 miles from Mr. Weisen's home.  "Where the distance between [the plaintiff's residence and a public accommodation] is significant, especially if it is in excess of 100 miles, courts have often held that such a distance weighs against finding a reasonable likelihood of future harm." *See Molski v. Kahn Winery*, 405 F.Supp.2d 1160, 1164 (C.D. Cal.) (a distance of 104 miles weighs against a finding of a likelihood of future harm); *Steven Bro. v. Tiger*

*Partner, LLC*, 331 F.Supp.2d 1368, 1373 (M.D. Fla. 2004) (finding a plaintiff lacks standing when he lived 280 miles from the public accommodation at issue); *Hoepfl v. Barlow*, 906 F.Supp. 317, 320 (E.D. Va. 1195) (finding a plaintiff lacked standing when she moved to a different state).

But other courts have taken this further and held that vague assertions about intent to return to a facility to ensure compliance with the ADA are not sufficient to convey standing. *See Disabled Patriots of Am., Inc. v. City of Trenton*, Civ. No. 07-CV-3165 (FLW), 2008 WL 4416459, at *3 (D. N.J. Sept. 24, 2008). Mr. Weisen admits that he has not returned to the Cottage Grove Speedway. (J. Weisen Depo. at 65:8-15; 68:14-23.) Mr. Weisen testified that he goes to other Speedways—though he could not remember which ones—by happenstance: when "they are just on roads that I drive on. Like I said, on Marketplace, I could end up anywhere. If there is something on there for free and I know I can go get it for free and sell it, I go get it . . . If I see one, I'll just pull right in. If I'm thirsty and want a cup of coffee, I'll pull right in." (J. Weisen Depo. at 69:23–70:2, 70:22–24.) This is the exact "some day" intention that the Supreme Court ruled in *Lujan* was not sufficient to convey standing.

Mr. Weisen's extensive litigation history also cuts against his ability to demonstrate an intent to return. The case of *Steelman v. Rib Crib No. 18*, 2012 WL 4026686 (W.D. Mo. Sept. 12, 2012) is particularly instructive here. In *Steelman*, the plaintiff filed twelve separate complaints against the defendant asserting various violations of the ADA. *Id.* at *1. In assessing whether the plaintiff had standing to bring any of the complaints, the court held:

> [An] ADA plaintiff cannot manufacture standing to sue in a federal court by simply claiming that [s]he intends to return to the Facility. When a plaintiff lacks concrete plans to return, the Court must satisfy itself that a plaintiff's professed intent to return is sincere and supported by the facts. Moreover, [c]ourts have found that a serial plaintiff's extensive litigation history can undercut a professed intent to return.

*Id.* at *4. The Western District of Missouri went on to find that the plaintiff's 67 ADA lawsuits detracted from her claim that she intended to return to each business and that the plaintiff had not "set forth sufficient arguments to persuade the Court that she does have standing to pursue relief." *Id.*

Here, Mr. Weisen initiated 91 ADA lawsuits in 15 months, and has continued to assert ADA lawsuits since his deposition. (*See* 2nd Weisen Depo. at 303:15-25.)[7] To date, Mr. Weisen has failed to return to at least 63 of those places of public accommodation. (2nd J. Weisen Depo., 21:24–22:2; 25:5-9; 29:22-25; 32:19-23; 40:3-5; 40:24–41:2; 44:13-15; 54:21-25; 58:17-20; 62:24–63:8; 65:23–66:2; 81:3-6; 86:21-25; 94:6-11; 100:11-15; 118:14-22; 121:15-17; 123:22-25; 127:14-18; 130:4-6; 135:23–136:2; 138:17-21; 141:5-7; 143:20-23; 147:6-11; 149:19–150:1; 151:5-8; 155:3-9; 157:21-23; 160:16-18; 165:15-17; 168:16-22; 171:6-8; 173:18-22; 176:9-11; 179:1-3; 180:22-24; 186:16-20; 189:9-12; 191:21-25; 194:16-21; 203:1-3; 205:15-18; 208:16–209:9; 212:17-19; 215:11-13; 217:10-12; 221:10-19; 228:9-12; 232:9-13; 235:14-17; 239:8-10; 242:16–243:9; 246:1-3; 248:7-

---

[7] Incredibly, Mr. Weisen could not even recall where twenty-seven of the places of public accommodation were. (2nd J. Weisen Depo. at 20:6-8, 22:20–23:9, 27:18-23, 31:2-5, 35:5-6, 40:24–41:2, 42:19-22, 46:25–47:6, 49:20-23, 53:1-5, 56:20-23, 60:18-22, 63:24–64:3, 70:5-7, 79:12-16, 81:22-24, 97:6-8, 109:11-13, 113:19-22, 116:25–117:4, 122:14-15, 128:22-23, 146:8-9, 148:17-19, 153:19-21, 166:2-10, 301:16-21.)

10; 257:14-18; 260:4-7; 272:12-17; 275:12-18; 280:14-18; 282:24–283:2; 288:22-24; 297:2-6.)  In fact, Mr. Weisen could only affirmatively state that he had returned to ten of the places of public accommodation that he sued.  (2nd J. Weisen Depo., 15:19-21; 19:4-7; 68:11-21; 112:7-11; 125:17-20; 182:20–183:2; 199:23–200:1; 251:7-14; 262:20-24; 268:22–269:2; 292:8-11.)  Nine of those places were near his prior home in Brooklyn Park. (*See id.*)

Because Mr. Weisen cannot establish a legitimate intent to return to the Bloomington Speedway, the Court should grant summary judgment in favor of Speedway on this alternative ground.

## III.    The Court should grant summary judgment in favor of Speedway because Mr. Weisen's claims are moot.

But even if Plaintiff could establish standing, which he cannot, his claims still fail because the underlying allegations are now moot.  "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Boitnott v. Border Foods, Inc.*, 361 F.Supp.3d 858, 865 (D. Minn. 2019) (citing *Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013)).  When a defendant asserts that "voluntary cessation of the allegedly unlawful conduct renders a case moot," it is the defendant's burden to show that the conduct cannot reasonably be expected to recur.  *Id.*  "ADA claims are moot when a defendant has presented evidence that modifications to its property have remedied the ADA violations identified in the complaint."  *Id.* at 866.

Here, Mr. Weisen alleged eleven violations of the ADA: (1) a portion of the disabled accessible parking space and/or access aisle is too steep; (2) the running slope of the curb ramp is too steep; (3) the cross slope for the curb ramp is too steep; (4) the landing at the top of the curb ramp is not level, wide enough, or long enough; (5) the curb ramp flares are too steep; (6) the adjacent surface at the transition from the curb ramp to the street is not at the same level[8]; (7) operable parts of the gas pump are too high; (8) the self-service shelf for condiments and lids is too high; (9) the toilet compartment has inadequate maneuvering clearances; (10) a toilet paper dispenser is too far from the toilet; and (11) the bathroom mirror is too high.  (ECF No. 1-1, pp. 11–12, ¶ 20.)

As of September 24, 2020, all alleged ADA violations referenced in the Complaint that are required to be remediated have been:

| Alleged Violation | 2010 ADA Standards for Accessible Design ("ADAAG 2010 Standards") | Cottage Grove Location |
| --- | --- | --- |
| **Disabled Accessible Parking Space and/or Access Aisle – Steep (¶ 20(a))** | "Slopes not steeper than 1:48 [or 2.08%] shall be permitted."  Standard 502.4. | Compliant<br>• 34/36 measurements have slopes less than 2%<br>(Olson Dec., Ex. E at p. 4.) |

_____

[8] It is undisputed that Speedway does not own the curb ramp and that the transition from the curb ramp to the street is on city property. (*See* Olson Dec., Ex. E at p. 7.)  As Speedway does not own the property on which the alleged barrier sits, it has not failed to remove the alleged architectural barrier and cannot be said to have discriminated against Mr. Weisen on the basis of this allegation. *See, e.g., Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 966-67 (9th Cir. 2006) (finding that a strip of grass owned by a city did not fall within Title III's definition of "facility" as the defendant did not control, maintain, or manage the property).

| | | |
|---|---|---|
| **Curb Ramp Running Slope – Steep (¶ 20(b))** | "Ramp runs shall have a running slope not steeper than 1:12 [or 8.3%]." Standards 405.2 & 406.1. | Compliant<br>• 8.2%<br>(Olson Dec., Ex. E at p. 5.) |
| **Curb Ramp Cross Slope – Steep (¶ 20(c))** | "Cross slope of ramp runs shall not be steeper than 1:48 [or 2.08%]." Standards 405.3 & 406.1. | Compliant<br>• .6%<br>(Olson Dec., Ex. E at p. 5.) |
| **Curb Ramp Landing – Level, Width, Length (¶ 20(d))** | "The landing clear length shall be 36 inches (915 mm) minimum. The landing clear width shall be at least as wide as the curb ramp, excluding flared sides, leading to the landing." Standard 406.4.<br><br>"Slopes not steeper than 1:48 [or 2.08%] shall be permitted." Standard 405.7.1 | Compliant<br>• Unobstructed measurements of 3'-1" wide and 3'-0" deep<br>• Slopes are less than 2%<br>(Quarve-Peterson Dec. at ¶ 4; Olson Dec., Ex. E at p. 3.) |
| **Curb Ramp Flares – Steep (¶ 20(e))** | "Where provided, curb ramp flares shall not be steeper than 1:10 [or 10%]." Standard 406.3. | Compliant<br>• Less than 10%<br>(Olson Dec., Ex. E at p. 6.) |
| **Operable Parts of Gas Pump – Height (¶ 20(g))** | "*Operable parts* of fuel dispensers shall be permitted to be 54 inches (1370 mm) maximum measured from the surface of the *vehicular way* where fuel dispensers are installed on existed curbs." Standard 308.3.2.1. | Compliant<br>• The "help" button is 52.5 inches high.<br>(Olson Dec., Ex. E at p. 7.) |
| **Self-Service Shelf (Condiments/Lids) – Height (¶ 20(h))** | "Where a clear floor or ground *space* allows a parallel approach to an *element* and the side reach is unobstructed, the high side reach shall be 48 inches (1220 mm) maximum and the low side reach shall be | Complaint<br>• Lids for hot drinks are 44 inches high, 10 inches deep<br>• Condiments are 42 inches high, 10 inches deep |

| | | |
|---|---|---|
| | 15 inches (380 mm) minimum above the finish floor or ground." Standards 308.3.1 & 904.5.1.<br><br>"Where a clear floor or ground *space* allows a parallel approach to an *element* and the high side reach is over an obstruction, the height of the obstruction shall be 34 inches (865) mm maximum and the depth of the obstruction shall be 24 inches (610 mm) maximum. The high side reach shall be 48 inches (1220 mm) maximum for a reach depth of 10 inches (255 mm) maximum." Standards 308.3.2 & 904.5.1. | • Other condiments are 43 inches high<br>• Fresh condiments are 41 inches high, 17 inches deep<br>(Olson Dec., Ex. E at p. 8) |
| **Bathroom – Maneuvering Clearance Requirements (¶ 21(i))** | "Clear floor space for water closets not in stalls shall comply with Fig. 28." Figure 28 provides that a toilet room depth must be 66 inches deep and 48 inches minimum wide with 36 inches wide at the toilet. Standard 4.16.2; Figure 28. | Compliant<br>• 62 inches wide by 65 inches deep; 37 inches wide at the toilet.[9]<br>(Olson Dec., Ex. E at p. 9; Quarve-Peterson Dec. at ¶¶ 8-9.) |
| **Toilet Paper Dispenser – Distance (¶ 20(j))** | "Toilet paper dispensers . . . shall be 7 inches (180 mm) minimum and 9 inches (230 mm) maximum in front of | Compliant<br>• 5 inches<br>(Olson Dec., Ex. E at p. 9.) |

[9] "[I]n certain instances injunctive relief may not be appropriate for violations of ADAAG Standards that are deemed to be de minimis. Such de minimis violations do not materially impair the use of an area for its intended purpose, nor does it pose any apparent danger to persons with disabilities." *Parr v. L&L Drive-Inn Rest.*, 96 F.Supp.2d 1065, 1086 n. 26 (D. Haw. 2000) (internal citations omitted); *see also Cayette v. PNK (Baton Rouge) P'ship*, Civ. No. 15-692-SDD-RLB, 2016 WL 3579028, at *5 (M.D. La. May 16, 2016).

| | | |
|---|---|---|
| | the water closet measured to the centerline of the dispenser." Standard 604.7. | |
| **Lavatory Mirror – Height (¶ 20(k))** | "Mirrors located above lavatories or countertops shall be installed with the bottom edge of the reflecting surface 40 inches (1015 mm) maximum above the finish floor or ground." Standard 603.3. | Compliant<br>• 40 inches<br>(Olson Dec., Ex. E at p. 10.) |

(*See* Olson Dec., Ex. E.)

In this regard, this case is similar to the *Boitnott* case. In *Boitnott*, the plaintiff—who was represented by Mr. Weisen's counsel and is the one who introduced Mr. Weisen to the world of ADA litigation—visited a Taco Bell and noticed various purported violations of the ADA that prevented him from patronizing the business. 361 F.Supp.3d at 861–62. The plaintiff filed suit and, as soon as the proper defendant became aware of the suit, it hired an auditor that specialized in ADA compliance and addressed the ADA violations alleged in the complaint. *Id.* at 862. After the changes were made, the auditor revisited the property and verified that all of the architectural barriers contained in the complaint had been corrected. *Id.* The defendant moved to dismiss the complaint, arguing that the plaintiff's claims were moot. *Id.*

The plaintiff scrambled to oppose dismissal, first arguing that the defendants could not demonstrate mootness because they had failed to remedy "*all*" of ADA violations in the restaurant. 361 F.Supp.3d at 865. The Court disregarded the plaintiff's argument, as there was no authority to support the contention that a defendant must remedy conditions that were not identified in a complaint in order to establish that a plaintiff's claims are

moot.  *Id.* at 865–66.  The Court then went on to find that the record clearly demonstrated that the defendants had remedied the ADA violations alleged in the complaint and that those violations would not recur unless the defendants took affirmative steps to remove or alter the features they had installed or corrected.  *Id.* at 866.

Then, the plaintiff argued that his claims could not be moot because he sought an order directing the defendants to modify their policies, practices, and procedures to ensure ongoing ADA compliance.  361 F.Supp.3d at 867.  While the Court noted that the plaintiff's complaint made general allegations that the defendants had failed to adopt adequate policies, procedures, and practices, he could not identify any particular policy, procedure, or practice that the defendants had failed to modify but "instead relie[d] on inferences derived from claimed architectural barriers that have undisputedly been remedied."  *Id.* at 867–68.  As such, the Court found that the defendants had voluntarily remedied any alleged inadequacies, found the plaintiff's claims were moot, and dismissed the complaint.  *Id.* at 868.

The same holds true here.  Because all of the purported ADA violations that were alleged to have existed at Speedway's Bloomington location have been remedied, the Court should conclude—like it did in *Boitnott*—that Plaintiff's claims are moot and grant summary judgment in favor of Speedway.

## IV. In the alternative, the Court should dismiss Mr. Weisen's claims as a sanction for spoliation.

The Court should also dismiss Mr. Weisen's claims as a sanction for spoliation. When a party alleges spoliation, the Court must determine the point at which the spoliator

had a duty to preserve the evidence at issue. *Hall v. Ramsey Cnty.*, Civ. No. 12-1915 (DSD/LIB), 2013 WL 12141435, at *2 (D. Minn. Apr. 8, 2013). The obligation to preserve evidence begins when a party knows or should have known that the evidence is relevant to future or current litigation. *E*Trade Secs. LLC v. Deutsche Bank AG*, 230 F.R.D. 582, 588 (D. Minn. 2005).

Here, within four days of Plaintiff's counsel first informing Speedway of the alleged violations at the Cottage Grove Speedway, Speedway requested that Plaintiff's counsel provide the date and time that Mr. Weisen supposedly visited the store. Plaintiff's counsel initially refused this request, only then to provide Speedway with the incorrect year of the visit despite the fact it appears to have occurred within one month from that exchange. Counsel then sued the case out a month later alleging that Mr. Weisen was at the Cottage Grove Speedway "[w]ithin the applicable limitations period." Mr. Weisen now cannot recall when he supposedly visited the Cottage Grove Speedway. This basic information should have been secured by Plaintiff's counsel when initially requested by Speedway. It was not, and for no good reason. Because of this, even if it could have gone through two months or 1,464 hours of video surveillance footage in an attempt to see if Mr. Weisen ever visited the Cottage Grove Speedway, Speedway lost the opportunity to preserve the surveillance footage of the incident in question due to it being written-over. This footage could have been used to further attack Mr. Weisen's inability to demonstrate an injury-in-fact.

The prejudice to Speedway is substantial. As demonstrated in the companion case, surveillance footage has already exposed Mr. Weisen lying about being at the Bloomington

Speedway in question. Accordingly, the Court should find that Plaintiff did not take reasonable steps to allow Speedway to preserve surveillance footage and should dismiss Plaintiff's claims. *See* Fed. R. Civ. P. 37(e)(2)(C). At the very least, Speedway is entitled to a jury instruction that Plaintiff did not visit the Cottage Grove Speedway. *See* Fed. R. Civ. P. 37(e)(2)(B).

## V. Speedway is entitled to its attorney's fees as the prevailing party under Title III of the ADA.

Finally, Speedway is entitled to an award of attorney's fees and costs incurred in defending this action. 42 U.S.C. § 12205 (2018) provides: "In any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs." This includes defendants who prevail on summary judgment. *See, e.g., Quasius v. Schwan Food Co.*, Civ. No. 08-575 (JNE/JJG), 2010 WL 3218591, at *1 (D. Minn. Aug. 13, 2010); *EEOC v. Hibbing Taconite Co.*, 740 F.Supp.2d 1052, 1055 (D. Minn. 2010); *see also Whitaker v. 370 N. Canon Drive, LP*, No. 19-02918-CJC (GJSx), 2020 WL 6130139 (C.D. Cal. Oct. 8, 2020).

Because Speedway should prevail on summary judgment, the Court should grant Speedway's request for attorney's fees and costs pursuant to Section 12205 of the ADA. Speedway respectfully requests the opportunity to submit a detailed fee petition within 14 days of any order granting its motion for summary judgment.

## CONCLUSION

For the foregoing reasons, Speedway respectfully requests that the Court grant its motion for summary judgment and dismiss Plaintiff's claims with prejudice in their entirety, and further permit Speedway to submit a petition for attorney's fees and costs.

**BASSFORD REMELE**
*A Professional Association*

Date:  January 4, 2021

By: /s/ Daniel R. Olson
Stephen O. Plunkett (MN #203932)
Daniel R. Olson (MN #389235)
Jessica L. Kometz (MN #399303)
100 South 5th Street, Suite 1500
Minneapolis, MN 55402-1254
Telephone:    (612) 333-3000
Facsimile:    (612) 333-8829
splunkett@bassford.com
dolson@bassford.com
jkometz@bassford.com

*Attorneys for Defendant Northern Tier Retail LLC d/b/a Speedway*