UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Jeffrey Weisen,

   Plaintiff,

v.             Case No. 19-cv-2624 (JNE/ECW)
               ORDER
Northern Tier Retail LLC doing business as
Speedway,

    Defendant.

   Plaintiff Jeffrey Weisen alleges Defendant Northern Tier Retail LLC doing

business as Speedway ("Speedway") violated the Americans with Disabilities Act, 42

U.S.C. § 12101 *et seq.* ("ADA") at the Speedway store and gas station located at 7162

East Point Douglas Road South, Cottage Grove, Minnesota ("Cottage Grove Speedway").

This matter is before the Court on Speedway's Motion for Summary Judgment, Weisen's

Motion for Partial Summary Judgment, and Speedway's Motion to Exclude Expert

Testimony. ECF Nos. 67, 74, 82.

## BACKGROUND

### I. General Background

   The ADA protects the rights of individuals with disabilities with respect to places

of public accommodation, commercial facilities, transportation, and other places or

services. Title III of the ADA prohibits places of public accommodation from

discriminating against persons with disabilities and requires them to be readily accessible

to and independently usable by persons with disabilities. 42 U.S.C. §§ 12181-89. The

Department of Justice has promulgated rules implementing Title III, including the 2010 ADA Standards for Accessible Design ("2010 Standards").[1]

It is undisputed that the Cottage Grove Speedway, a convenience store and gas station, is a place of public accommodation. It is also undisputed that Weisen is a disabled individual. Weisen became disabled as a result of a motorcycle accident in 2016 and is dependent on a wheelchair.

In the summer of 2019, Weisen complained to his childhood friend, Jerald Boitnott, that he had fallen in a gas station restroom as a result of reaching for a soap dispenser that was too high. Boitnott, a disabled person who litigated ADA cases with the assistance of the Throndset Michenfelder Law Office, introduced Weisen to Craig Seifert, an investigator employed by the Throndset Michenfelder Law Office. The three of them "talked about all the ADA stuff." Olson Decl. Ex. A, J. Weisen Dep. 23:12-22. ECF No. 72-1. Weisen learned that he could make money from ADA litigation and that it could "make the people correct the problems." *Id.* at 25:4-7.

With the assistance of the Throndset Michenfelder Law Office, Weisen has since initiated over ninety ADA lawsuits, though he does not know the total number. In many of these lawsuits, Weisen does not know whether the defendants have remediated their alleged ADA violations. When first deposed, Weisen could not remember whether the instant case was active.

---

[1] The 2010 Standards relevant here are in appendices B and D to 36 C.F.R. part 1191.

## II.     The Cottage Grove Speedway Case

The exact date Weisen visited the Cottage Grove Speedway is unknown, though Weisen's wife testified at her deposition that she and Weisen visited the Cottage Grove Speedway in July or August of 2019.[2] They stopped at the Cottage Grove Speedway so Weisen's wife could use the restroom and get coffee. Weisen intended to enter the store as well but was deterred because the curb and sidewalk were obstructed. Weisen's wife also noticed that the disabled-accessible parking space was at a slant. After determining that Weisen was not up to traversing these barriers, they decided to park in a non-accessible parking space as opposed to an accessible parking space.

Weisen remained in the car while his wife entered the store. Weisen's wife measured potential interior ADA violations against her body and informed Weisen about the potential violations when she returned to the car. Weisen contacted Seifert a day or two later. Seifert then spoke with Weisen's attorneys at the Throndset Michenfelder Law Office.

On August 8, 2019, one of Weisen's attorneys reached out to Speedway concerning the ADA violations at the Cottage Grove Speedway and two other Speedway locations. Weisen's attorney inquired whether Speedway was interested in resolving the

---

[2] In his declaration accompanying his Motion for Partial Summary Judgment, Weisen states, "I routinely pass by the [Cottage Grove Speedway] on my way to and from Treasure Island, a casino located in Red Wing, Minnesota. I have visited the [Cottage Grove Speedway] on numerous occasions, and plan to continue to do so." Weisen Decl. ¶ 3, ECF No. 78. However, the instant action specifically pertains to Weisen's July or August 2019 visit. *See e.g.*, Pl.'s Mem. Supp. Mot. Partial Summ. J. 2, ECF No. 77. Weisen has not presented evidence as to whether he encountered ADA violations during his prior visits.

matters "pre-suit." Moosbrugger Decl. Ex. A, at 4, ECF No. 70-1. On August 12, 2019, Speedway's in-house counsel replied requesting the specific dates and times Weisen had frequented the Speedway locations. She specified that she needed this information to preserve evidence. Weisen's attorney replied that Weisen had visited the Cottage Grove Speedway sometime in July or August of 2018. Speedway's in-house counsel explained that she needed the date and time and that failure to provide this information would be highly prejudicial to Speedway's defense. Speedway nevertheless checked its surveillance system at the Cottage Grove Speedway, but the system retained only three months of footage before overwriting it.

Weisen served Speedway with the instant case on September 11, 2019. In his Complaint, Weisen alleges he visited the Cottage Grove Speedway "[w]ithin the applicable limitations period." Notice of Removal Ex. A, Compl. ¶ 20, ECF No. 1-1. Weisen's Complaint lists eleven architectural barriers at the Cottage Grove Speedway in violation of the ADA: (1) a portion of the accessible parking space and/or access aisle is too steep; (2) the running slope of the curb ramp is too steep; (3) the cross slope of the curb ramp is too steep; (4) the landing at the top of the curb ramp is not level, wide enough, or long enough; (5) the curb ramp flares are too steep; (6) the adjacent surface at the transition from the (city owned) curb ramp to the street is not level; (7) the operable parts of the gas pump are too high; (8) the self-service shelf for condiments and lids is too high; (9) the toilet compartment has inadequate maneuvering clearances; (10) a toilet paper dispenser is too far from the toilet; and (11) a bathroom mirror is too high. Weisen also alleges that Speedway's policies, procedures, and practices violate the ADA.

Speedway first learned that Weisen and his wife had visited the Cottage Grove Speedway in July or August of 2019, not 2018, when deposing Weisen's wife on September 8, 2020.

Speedway has since undertaken interior and exterior renovations at the Cottage Grove Speedway. Speedway's expert, Julee Quarve-Peterson, opines that the Cottage Grove Speedway is now ADA-compliant.

## EVIDENTIARY CLAIMS

### I. Quarve-Peterson's Expert Testimony on the Size of the Curb Ramp Landing

The 2010 Standards require that a curb ramp landing be a specific size. 2010 Standard 406.4. Speedway relies on Quarve-Peterson's January 4, 2021, declaration to establish the size of the Cottage Grove Speedway's curb ramp landing. In that declaration, Quarve-Peterson asserts that the top of the curb ramp is "sufficiently wide and long, measuring 3'-1" wide (unobstructed) and 3'-0" long/deep (unobstructed)." Quarve-Peterson Decl. ¶ 4, ECF No. 71. In his response to Speedway's motion for summary judgment, Weisen argues that the Court should disregard the information in this assertion as it was not disclosed before the expert discovery deadline.[3] Speedway does not dispute that the disclosure of this information was untimely. Instead, Speedway argues that Federal Rule of Evidence 705 allows experts to provide underlying facts or data after they have stated their opinions.

---

[3] The deadline for expert disclosures was October 15, 2020. Order 1, ECF No. 48.

Federal Rule of Evidence 705 provides that an expert can state an opinion without first testifying to the underlying facts or data. However, the Advisory Committee Notes explain that Rule 705 "relates to the manner of presenting testimony at trial" and should not conflict with Federal Rule of Civil Procedure 26(a)(2)(B). Fed. R. Evid. 705, Advisory Committee's Notes on 1993 Amendments.

Federal Rule of Civil Procedure 26(a)(2)(B)(ii) requires disclosure of an expert report containing "the facts or data considered by the witness" in forming his or her opinions. "If a party fails to provide information . . . as required by Rule 26(a) . . . the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Here, Quarve-Peterson's previously disclosed expert report did not include any facts or data related to the landing's size. *See* Olson Decl. Ex. E, at 3, ECF No. 72-1. Speedway does not argue that the untimely disclosure of this information was substantially justified or harmless. Because Speedway failed to provide this information as required by Rule 26(a), Speedway cannot use it "to supply evidence" on its motion for summary judgment. Fed. R. Civ. P. 37(c)(1).

## II.    Seifert's Expert Testimony

Speedway moves to exclude the testimony of Weisen's expert witness, Craig

Seifert. Federal Rule of Evidence 702 governs the admissibility of expert testimony. Rule

702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience,
> training, or education may testify in the form of an opinion or otherwise if:
>
> (a)    the expert's scientific, technical, or other specialized
>        knowledge will help the trier of fact to understand the
>        evidence or to determine a fact in issue;
>
> (b)    the testimony is based on sufficient facts or data;
>
> (c)    the testimony is the product of reliable principles and
>        methods; and
>
> (d)    the expert has reliably applied the principles and methods to
>        the facts of the case.

The Eighth Circuit has laid out a three-part test for district courts to apply when

screening expert testimony under Rule 702:

> First, evidence based on scientific, technical, or other specialized
> knowledge must be useful to the finder of fact in deciding the ultimate issue
> of fact. This is the basic rule of relevancy. Second, the proposed witness
> must be qualified to assist the finder of fact. Third, the proposed evidence
> must be reliable or trustworthy in an evidentiary sense, so that, if the finder
> of fact accepts it as true, it provides the assistance the finder of fact
> requires.

*Polski v. Quigley Corp.*, 538 F.3d 836, 839 (8th Cir. 2008) (quoting *Lauzon v.*

*Senco Prods. Inc.*, 270 F.3d 681, 686 (8th Cir. 2001)). District courts should

exclude an expert's opinion only if it is "so fundamentally unsupported that it can

offer no assistance to the jury." *Id.* (quoting *Wood v. Minn. Mining & Mfg. Co.*,

112 F.3d 306, 309 (8th Cir. 1997)). Doubts about an expert's opinion should be resolved in favor of admissibility. *In re Wholesale Grocery Prods. Antitrust Litig.*, 946 F.3d 995, 1001 (8th Cir. 2019) (citing *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 758 (8th Cir. 2006)).

In its Motion to Exclude Expert Testimony, Speedway argues that the Court should exclude Seifert's testimony because Weisen's attorneys directed Seifert's investigation, Seifert is not qualified, and Seifert's investigation methods were generally unreliable. Weisen responds that Speedway's arguments go to the weight of Seifert's expert testimony and not its admissibility. Weisen's briefing does not specify what Seifert is an expert in, but Speedway questions his qualifications as an expert in ADA accessibility compliance. At oral argument, Weisen asserted Seifert is an expert in measurements with respect to ADA cases and in costs to correct ADA violations.

### a. Seifert's Methods

Speedway's first and third arguments concern the reliability of Seifert's measurement methods. Weisen claims that Seifert's measurements were reliable because Seifert used common tools that led him to conclusions that would be useful to the finder of fact, but presents no evidence concerning Seifert's investigation methods.

"To satisfy the reliability requirement, the proponent of the expert testimony must show by a preponderance of the evidence . . . that the methodology underlying his conclusions is scientifically valid." *Id.* at 1000 (quoting *Marmo*, 457 F.3d at 757-58).[4]

---

[4] When analyzing the reliability requirement, courts may look to various factors, such as those laid out in *Daubert v. Merrell Dow Pharmaceutical, Inc.*, 509 U.S. 579 (1993). *See*

Though the factual basis of an expert's opinion goes to the weight of the expert's testimony, *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 929-30 (8th Cir. 2001) (citation omitted), any step the expert has taken that renders the analysis unreliable renders the expert's testimony inadmissible, *In re Wholesale Grocery Prods. Antitrust Litig.*, 946 F.3d at 1001-02 (citation omitted) (affirming the district court's decision to exclude expert testimony that was based on a flawed assumption). "This is true whether the step completely changes a reliable methodology or merely misapplies that methodology." *Id.* at 1001 (citation omitted).

Here, Weisen has not satisfied his burden. The record reveals that Seifert followed Weisen's attorneys' instructions instead of a reliable methodology. Seifert admitted at his deposition that he was "just doing what [he was] instructed to do." Olson Decl. Ex. B, Seifert Expert Dep. 57:18-20, ECF No. 86-1. Seifert testified that he followed the attorneys' instructions when deciding everything from where to take his measurements and where to place his tools to how many measurements to take. *Id.* at 48:23-49:2 ("I was just told to place the tool and read off the numbers."), 49:3-6 (stating that he was "following the instructions of Mr. Michenfelder and Mr. Throndset"), 49:7-11 ("I just took the measurements as I was instructed."), 53:16-20 ("I was instructed to take a number of measurements."), 54:2-8 (stating he was measuring a specific area because he

---

*Lauzon*, 270 F.3d at 686-87 (discussing the factors laid out in *Daubert* as well as other factors). However, the reliability inquiry is "meant to be flexible and fact specific, and a court should use, adapt, or reject *Daubert* factors as the particular case demands." *Unrein v. Timesavers, Inc.*, 394 F.3d 1008, 1011 (8th Cir. 2005) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141-42 (1999)).

"was instructed to"). Similarly, Seifert testified that he did not take photographs with the tape measure because he "wasn't instructed to." *Id.* at 66:11-15. Seifert further testified that he relied on the attorneys' instructions when deciding what to include in his report. *See id.* at 53:4-11 (explaining that he included the number of designated accessible parking spaces because he was instructed to include it), 54:9-15 (explaining that he did not include a picture because he "wasn't instructed to put that in there"). Seifert also admitted that one of Weisen's attorneys, Chad Throndset, was the one recording his measurements.

Speedway's expert, Quarve-Peterson, witnessed Seifert's investigation of the Cottage Grove Speedway. Quarve-Peterson confirms that Seifert took directions from Weisen's attorneys. According to Quarve-Peterson, "If Seifert were sent to a site alone, it is questionable if he would know what, how or why to measure." Olson Decl. Ex. D, at 3, ECF No. 86-1. Quarve Peterson also noted that the attorneys recorded Seifert's measurements for him and that "[n]ot all measurements were written down." *Id.* at 2.

Seifert's investigation was problematic even looking past Seifert's reliance on Weisen's attorneys. Of particular note, Quarve-Peterson saw that Seifert did not use his slope measuring device properly. First, Seifert wobbled the device back and forth while taking readings and may have recorded several slope readings while the numbers on the device were still changing. In essence, Seifert jumped on the scale and recorded the weight while the dial was still moving. Second, Seifert took several readings after twisting the bottom of the device, which may have affected the accuracy of the readings.

Third, though Seifert testified that he calibrated the slope measuring device at his home, he did not calibrate the device at the Cottage Grove Speedway.

The location of Seifert's measurements also calls into question the accuracy of his findings. Quarve-Peterson noted that Seifert took slope readings without clearing debris, that Seifert measured slopes outside of the relevant locations, and that there was a "high probability of duplicate or missed slope readings that may [have affected the] overall findings." *Id.*

Furthermore, Seifert took certain measurements for no apparent reason. This is particularly concerning given Quarve-Peterson's assertion that Seifert frequently failed to measure the relevant aspects of alleged interior and exterior violations. Quarve-Peterson also asserted that no photos were taken of slope readings or tape measurements.

Weisen has not established, by a preponderance of evidence, that Seifert's methods were scientifically valid or reliable. Seifert's own deposition testimony, the fundamental problems Quarve-Peterson witnessed, and Weisen's failure to present evidence concerning Seifert's investigation methods suggest the contrary.

### b. Seifert's Qualifications

Speedway also argues that Seifert is unqualified because he has no training, education, or experience with ADA compliance. Though Siefert has investigated over 150 ADA cases, Speedway points out that Seifert was retained by Weisen's attorneys for every one of those investigations.

The proponent of the expert testimony must show by a preponderance of the evidence that the "expert is qualified to render the opinion." *In re Wholesale Grocery*

*Prods. Antitrust Litig.*, 946 F.3d at 1000 (quoting *Marmo*, 457 F.3d at 757-58). The appropriate inquiry on qualifications is whether the witness "is qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Gaps in an expert witness's qualifications generally go to the weight of the testimony and not its admissibility. *Robinson v. Geico Gen. Ins. Co.*, 447 F.3d 1096, 1100-01 (8th Cir. 2006) (allowing a neurologist to testify about a shoulder injury). Yet, the Court can consider whether an expert's findings flow from research independent of litigation or solely from litigation. *Lauzon*, 270 F.3d at 692.

The Court finds that Seifert is not qualified to serve as an expert on ADA compliance or ADA compliance measurements. Seifert has acted as an ADA compliance investigator over 150 times, but each of Seifert's investigations was part and parcel of litigation. Moreover, Seifert was retained by Weisen's attorneys at the Throndset Michenfelder Law Office for "each of those over 150 investigations." Olson Decl. Ex. B, Seifert Expert Dep. 43:7-10, ECF No. 86-1. This is problematic given Seifert's admission he was merely "[f]ollowing the instructions of Mr. Michenfelder and Mr. Throndset" during the investigation at issue here. *Id.* at 49:3-6.

Seifert's remaining ADA experience consists of one seminar related to ADA accessibility laws. Weisen argues that Seifert's experiences at Midwest Disability Initiative ("MDI") and Disability Research, Inc. ("DRI") bolster his qualifications. However, Seifert himself co-founded MDI in 2016 and was the only employee. Seifert founded DRI in 2019 and is likewise the only employee. Although the stated purpose of both organizations is to advocate for the disabled, Weisen has put forward no evidence of

Seifert enacting that purpose outside of the litigation-related investigations Seifert has performed for Weisen's attorneys.

Because Seifert has little training or experience in the ADA compliance industry outside of his involvement in litigation brought by Weisen's attorneys at the Throndset Michenfelder Law Office, Weisen has not established Seifert is qualified to render opinions on ADA compliance or ADA compliance measurements. The Court grants Speedway's Motion to Exclude Expert Testimony.

## SUMMARY JUDGMENT CLAIMS

Speedway moves for summary judgment on the grounds that Weisen lacks standing, Weisen's claims are moot, and as a sanction for spoliation of evidence. Weisen moves for partial summary judgment on his claims as they relate to barrier (1), the slope of the accessible parking space and access aisle, and barrier (4), the size of the curb ramp landing.

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When analyzing a summary judgment motion, "facts must be viewed in the light most favorable to the nonmoving party," but "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting Fed. R. Civ. P. 56(c)). To survive a defendant's motion for summary judgment, the plaintiff must present "sufficient probative evidence that would permit a finding in his favor without resort to speculation, conjecture, or fantasy." *Reed v. City of*

*St. Charles*, 561 F.3d 788, 790-91 (8th Cir. 2009) (internal quotations and citations omitted).

## I.      Standing

To demonstrate standing, a plaintiff must prove an injury in fact, a causal relationship between the challenged conduct and the injury, and that the injury will be redressed by a favorable decision. *Disability Support All. v. Heartwood Enters., LLC*, 885 F.3d 543, 545 (8th Cir. 2018) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). "An injury in fact is the 'invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Lujan*, 504 U.S. at 560). Title III of the ADA limits a plaintiff to injunctive relief. *Id.* at 546 (citing 42 U.S.C. § 2000a-3(a), incorporated by reference in § 12188(a)). Therefore, to establish an injury in fact in a Title III ADA case, a plaintiff must first show that architectural barriers caused an actual injury and second show an intent to return to the facility in the "imminent future but for those barriers." *Id.* (quoting *Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir. 2000)).

### a.  Actual Injury

An ADA plaintiff suffers an actual injury when they intend to enter a place of public accommodation but encounter a barrier that hinders them from doing so. *Smith v. RW's Bierstube, Inc.*, No. 17-CV-1866, 2019 WL 3304919, at *5 (D. Minn. July 23, 2019) (citing *Hillesheim v. Holiday Stationstores, Inc.*, 900 F.3d 1007, 1011 (8th Cir. 2018)); *see Dalton v. JJSC Props., LLC*, 967 F.3d 909, 913 (8th Cir. 2020) (per curiam); *Disability Support All.*, 885 F.3d at 546-47. A plaintiff need not engage in a "futile

gesture" of attempting to access an obviously inaccessible building, but the alleged barrier must have actually deterred them from entering. *Smith*, 2019 WL 3304919, at *5; *see Dalton*, 967 F.3d at 913; *Disability Support All.*, 885 F.3d at 546-47.

In *Disability Support Alliance*, there was evidence that the disabled plaintiff had intended to enter a building but had not exited his vehicle because he could see architectural barriers that he would have been unable to traverse. 885 F.3d at 545-46. There was also evidence in the record contradicting this: the building was locked; visitors with scheduled appointments gained access only upon admission by the building's tenants; and the plaintiff had no appointment. *Id.* Nonetheless, the plaintiff had established a genuine dispute of material fact as to whether he had suffered an actual injury. *See id.* at 546-47.

Speedway argues that Weisen did not intend to enter the Cottage Grove Speedway because Weisen and his wife parked in a non-accessible parking space. Speedway fails to mention that both Weisen and his wife testified that Weisen intended to enter the store but was deterred by the exterior entrance barriers he viewed from the car. Only after determining that Weisen was not up to traversing these barriers did they park in a non-accessible parking space. As in *Disability Support Alliance*, there is a genuine dispute of material fact as to whether Weisen intended to enter the facility and was prevented from doing so by the exterior entrance barriers, barriers (1)-(6).

Though a plaintiff need not engage in a futile gesture of attempting to enter an inaccessible building, a plaintiff who encounters only exterior violations does not have standing to sue over interior violations. *Davis v. Morris-Walker, Ltd.*, 922 F.3d 868, 871

(8th Cir. 2019) (citing *Davis v. Anthony, Inc.*, 886 F.3d 674, 678 (8th Cir. 2018)). Because it is undisputed that Weisen did not enter the Cottage Grove Speedway, he does not have standing to sue over the alleged interior barriers, barriers (8)-(11). The Court grants summary judgment on Weisen's claims as they relate to the interior barriers.

The seventh alleged barrier, that the operable parts of the gas pump are too high, presents a more difficult question because neither party has identified evidence that Weisen encountered the gas pump itself. There is conflicting Eighth Circuit case law on whether a plaintiff who encounters one ADA violation in a parking lot has standing to sue over violations they did not encounter in that parking lot. On the one hand, *Steger* suggests the answer is yes. 228 F.3d 889. There, the court held that a blind plaintiff who encountered several interior violations had standing to seek remediation of other interior violations, which he did not encounter, that would affect blind people. *Id.* at 893-94. The court reasoned that a contrary holding would lead to inefficient and impractical "piecemeal [ADA] compliance." *Id.* at 894.

On the other hand, *Hillesheim* suggests the answer is no. 900 F.3d 1007. There, the court addressed a disabled plaintiff's standing to sue over three barriers in a store parking lot, albeit under the Minnesota Human Rights Act as the ADA claims had been mooted. *Id.* at 1009-10. The plaintiff had standing to sue over a garbage can, which prevented him from safely navigating the handicap ramp. *Id.* at 1011. The plaintiff had no standing to sue over the other two exterior violations, lack of vertical signposts marking the accessible parking spaces and one accessible parking space without an adjacent access aisle, because the plaintiff never explained how these violations hindered him

from entering the store. *Id.* at 1010. The plaintiff did not state he had difficulty identifying which spots were handicap accessible or whether the other accessible spots, which had adjacent access aisles, were taken. *Id.*; *see also Hillesheim v. O.J.'s Cafe, Inc.*, 968 F.3d 866, 868 (8th Cir. 2020) (per curiam) ("Although Hillesheim need not traverse the disputed slopes to establish a risk of ongoing or future harm, he cannot seek relief by alleging an ADA violation that would not affect his access to the restaurant.").

The Court need not address this tension because Weisen does not contest Speedway's assertion that his claims as to the gas pump barrier are moot, as discussed below.

### b. Intent to Return

In addition to demonstrating an actual injury, an ADA Title III plaintiff must demonstrate an intent to return to the facility where they experienced the actual injury. *Disability Support All.*, 885 F.3d at 546. "Intent to return to the place of injury 'some day' is insufficient." *Smith v. Golden China of Red Wing, Inc.*, 987 F.3d 1205, 1209 (8th Cir. 2021) (quoting *Steger*, 228 F.3d at 893 (quoting *Lujan*, 504 U.S. at 564 (finding the plaintiffs' "some day" intentions to travel halfway across the globe to observe endangered species insufficient to establish an "imminent" future injury))). While the Eighth Circuit has no definitive test to decide whether a plaintiff possesses the requisite intent to return, district courts often consider the following factors: (1) the plaintiff's proximity to the place of accommodation; (2) the frequency of the plaintiff's nearby travel; (3) the plaintiff's past patronage of the place of accommodation; and (4) the definiteness of the plaintiff's plans to return. *Sawczyn v. BMO Harris Bank Nat'l Ass'n*, 8

F. Supp. 3d 1108, 1112 (D. Minn. 2014); *see also Dalton v. Simonson Station Stores, Inc.*, No. 0:17-cv-04427, 2019 WL 5579981, at *9 (D. Minn. Oct. 29, 2019) (listing cases applying these four factors), *aff'd*, 830 F. App'x 486 (8th Cir. 2020) (per curiam).

There is sufficient evidence on which a factfinder could find that Weisen intends to return to the Cottage Grove Speedway. The first factor, proximity, weighs against Weisen because he lives eighty-six miles away. Nevertheless, both the frequency factor and the past patronage factor weigh in favor of Weisen's intent to return at the summary judgment stage. *See Scott*, 550 U.S. at 380 (finding a court views the evidence at summary judgment in favor of the non-moving party). Weisen has submitted a sworn declaration that he routinely passes the Cottage Grove Speedway on his way to the Red Wing Treasure Island casino and has visited the Speedway on numerous occasions.

The final factor, definiteness of plans to return, also weighs in Weisen's favor at the summary judgment stage. Unlike the plaintiffs in *Lujan*, Weisen is not travelling halfway across the globe. Weisen's situation is more similar to the plaintiff's situation in *Sawczyn*. The plaintiff in *Sawczyn* did not need to establish the exact date he intended to return to the defendant's ATMs because ATM visits are spontaneous in nature and do not require concrete, advanced planning. 8 F. Supp. 3d at 1113. Visits to convenience stores and gas stations are similarly impromptu. People stop at convenience stores when it is convenient. People stop at gas stations when they need gas. While Weisen has not indicated a specific date on which he plans to return to the Cottage Grove Speedway, he passes it whenever he visits the Treasure Island casino. A reasonable factfinder could find that Weisen's plan to return to the Cottage Grove Speedway on his way to or from the

Treasure Island casino to obtain food, drinks, or gas, when necessary and convenient, is sufficiently definite.

In sum, there is a genuine dispute of material fact as to whether Weisen intended to enter the Cottage Grove Speedway and was deterred from doing so by the exterior entrance barriers. There is also a genuine dispute of material fact as to whether Weisen intends to return to the Cottage Grove Speedway in the imminent future. Accordingly, the Court denies Speedway's standing arguments as they relate to the exterior barriers. The Court also denies Weisen's Motion for Partial Summary Judgment as Weisen will have to establish standing at trial.

## II.    Mootness

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam)). In a Title III ADA case, a defendant's permanent physical improvements eliminate the case or controversy if they provide the requested relief. *Hillesheim*, 968 F.3d at 868 (citing *Davis*, 922 F.3d at 870). A plaintiff's request for nominal damages cannot establish a case or controversy in a Title III case because Title III limits a plaintiff to injunctive relief. *See Disability Support All.*, 885 F.3d at 546 (citing 42 U.S.C. § 2000a-3(a), incorporated by reference in § 12188(a)); *Wojewski v. Rapid City Reg'l Hosp., Inc.*, 450 F.3d 338, 342 (8th Cir. 2006).

Speedway argues that Weisen's claims are moot as it has remediated all of the alleged ADA violations. Because Weisen does not have standing to bring his claims as they relate to the interior barriers, the Court will not consider them in its mootness analysis. The Court will address the exterior barriers: (1) a portion of the accessible parking space and/or access aisle is too steep; (2) the running slope of the curb ramp is too steep; (3) the cross slope of the curb ramp is too steep; (4) the landing at the top of the curb ramp is not level, wide enough, or long enough; (5) the curb ramp flares are too steep; (6) the adjacent surface at the transition from the (city owned) curb ramp to the street is not level;[5] and (7) the operable parts of the gas pump are too high. The Court will also address Weisen's allegation that Speedway's policies, practices, and procedures are not ADA compliant.

### a. Barrier 1: A Portion of the Accessible Parking Space and/or Access Aisle Is Too Steep

The slopes of accessible parking spaces and access aisles must not be steeper than 1:48 or 2.08%. 2010 Standard 502.4. Speedway's expert, Quarve-Peterson, found the Cottage Grove Speedway compliant in this regard. Thirty-four out of the thirty-six measurements she took had slopes less than 2%. The other two measurements were 2.4%

---

[5] Speedway specifically moves for summary judgment as to Weisen's sixth claimed barrier because it does not own or operate the property at issue. Title III prohibits discrimination by those who own, lease, or operate places of public accommodation. 42 U.S.C. § 12182(a); *Pickern v. Pier 1 Imps. (U.S.), Inc.*, 457 F.3d 963, 966-67 (9th Cir. 2006) (finding summary judgment proper where the defendant did not control or otherwise operate the alleged architectural barrier). Here, Weisen does not dispute Speedway's evidence that the City of Cottage Grove owns and operates the adjacent surface at the transition from the city-owned curb ramp to the street. Therefore, the Court grants summary judgment on Weisen's claims as they relate to the adjacent surface.

and 2.7%. Weisen argues that the two slope measurements above 2% preclude summary judgment. However, Weisen offers no evidence that these two measurements would ultimately affect his access to the Cottage Grove Speedway, particularly in light of the thirty-four compliant measurements. *See Hillesheim*, 968 F.3d at 868 (finding that the plaintiff could not "seek relief by alleging an ADA violation that would not affect his access"). Nor does Weisen offer admissible evidence to contradict Quarve-Peterson's assertion that the tolerance of the slope reader can explain the two noncompliant measurements. Weisen's claims are therefore moot in so far as they rely on the slopes of the accessible parking space and access aisle.

### b.  Barrier 2: The Running Slope of the Curb Ramp Is Too Steep

The running slope of a curb ramp must not be steeper than 1:12 or 8.3%. 2010 Standard 405.2. Quarve-Peterson found that the running slope of the Cottage Grove Speedway was compliant at 8.2%. Weisen does not dispute this. Accordingly, Weisen's claims are moot in so far as they rely on the running slope of the curb ramp.

### c.  Barrier 3: The Cross Slope of the Curb Ramp Is Too Steep

The cross slope of a curb ramp must not be steeper than 1:48 or 2.08%. 2010 Standard 405.3. Quarve-Peterson found that the cross slope of the Cottage Grove Speedway curb ramp was compliant at 0.6%. Again, Weisen does not dispute this finding. Weisen's claims are moot as they relate to the cross slope of the curb ramp.

### d.  Barrier 4: The Landing at the Top of the Curb Ramp Is Not Level, Wide Enough, or Long Enough

The landings at the top of curb ramps must not be steeper than 1:48 or 2.08%. 2010 Standard 405.7.1. Quarve-Peterson found that the landing at the Cottage Grove Speedway was compliant at less than 2%. Weisen does not dispute the slope of the landing. Speedway has thus mooted Weisen's claims to the extent they rely on the slope of the curb ramp landing.

Weisen does dispute the landing's width and length. The 2010 Standards mandate that curb ramp landings be at least thirty-six inches long. 2010 Standard 406.4. Landings must also be at least as wide as the curb ramp leading up to them. *Id.* As discussed above, Speedway cannot use Quarve-Peterson's January 2021 assertion on the landing's size "to supply evidence" on its motion for summary judgment. Fed. R. Civ. P. 37(c)(1). More importantly, the pictures accompanying Quarve-Peterson's timely expert report call into question the landing's length and width. *See* Olson Decl. Ex. E, at 2-3, ECF No. 72-1. It appears from the pictures that the landing is not thirty-six inches long for the full width of the landing. It also appears that the landing is not as wide as the ramp for the full length of the landing. At the very least, there is a question of material fact as to the landing's size that precludes the Court from finding the barrier mooted at the summary judgment stage.

### e.  Barrier 5: The Curb Ramp Flares Are Too Steep

Curb ramp flares, when provided, must not be steeper than 1:10 or 10%. 2010 Standard 406.3. Quarve-Peterson found that the curb ramp flares were compliant at less

than 10%. As Weisen does not dispute this, Weisen's claims are moot in so far as they rely on the slope of the curb ramp flares.

### f. Barrier 7: The Operable Parts of the Gap Pump Are Too High

The 2010 Standards provide that the operable parts of fuel dispensers shall be at most, fifty-four inches from the surface of the vehicular way. 2010 Standard 308.3.1. The 2010 Standards define "operable part" as a "component of an element used to insert or withdraw objects, or to activate, deactivate, or adjust the element." 2010 Standard 106.5. Quarve-Peterson found that the gas pumps at the Cottage Grove Speedway were compliant because there were help buttons mounted 52.5 inches from the surface and Speedway's policies require that associates provide assistance to customers with disabilities by pumping their gasoline. Regardless of whether the help button constitutes an "operable part," Weisen does not contest that Speedway has mooted this barrier.

### g. Speedway's Polices, Practices, and Procedures

Weisen argues that his claims are not moot in so far as he seeks injunctive relief directing Speedway to modify its polices, practices, and procedures. In his Complaint, Weisen alleges, "Defendant's policies, procedures, and practices (including, but not limited to, those ensuring the identification and remediation of prohibited barriers, maintenance of accessible features, training and future compliance) are inadequate to ensure ongoing compliance with the ADA and therefore must be modified accordingly." Notice of Removal Ex. A, Compl. ¶ 49, ECF No. 1-1.

Pointing to *Boitnott v. Border Foods, Inc.*, 361 F. Supp. 3d 858 (D. Minn. 2019),[6] Speedway argues that Weisen's policy allegation is moot because it relies on claimed architectural barriers that have all been remedied. In *Boitnott*, the court found that a general allegation concerning the defendant's noncompliant ADA policies merely "relie[d] on inferences derived from claimed architectural barriers that [had] undisputedly been remedied." 361 F. Supp. 3d at 867-68. The allegation was moot because each of the alleged ADA barriers had been mooted. *Id.* at 868. The court reasoned, "To the extent that Defendants' policies, practices, or procedures may have been inadequate when Boitnott commenced this lawsuit, the record reflects that Defendants voluntarily remedied those inadequacies." *Id.* Conversely, in *Sawczyn*, there was a genuine dispute as to whether the defendant's ADA policies were compliant in part because there was a dispute as to whether the defendant had remedied each of the alleged ADA violations. 8 F. Supp. 3d at 1114.

Though Weisen used the same general language as the complaint in *Boitnott*, here there is evidence that Speedway has not remedied all of the alleged architectural barriers. There is a genuine dispute of material fact as to whether Speedway has remedied the size of the curb ramp landing. As in *Sawczyn*, there is thus a genuine dispute as to whether Speedway's ADA policies are compliant.

---

[6] Weisen's childhood friend, Jerald Boitnott, is the plaintiff in *Boitnott v. Border Foods, Inc*. Weisen's attorneys at the Throndset Michenfelder Law Office represented Boitnott in the case. Indeed, the complaint in *Boitnott* uses the same language as the Complaint here.

## III. Evidence Spoliation

Speedway next seeks summary judgment as a sanction for evidence spoliation.[7] Speedway argues that Weisen spoliated evidence when he refused to provide the date and time he visited the Cottage Grove Speedway because Speedway needed this information to preserve its surveillance video footage.

A spoliation-of-evidence sanction requires a finding of intentional destruction. *E.g.*, *Sherman v. Rinchem Co.*, 687 F.3d 996, 1006 (8th Cir. 2012). Here, Speedway makes no claim that Weisen intentionally destroyed the surveillance video footage. Nor could it. Weisen had no control over the footage itself. Rather, Speedway is arguing that it lost the opportunity to preserve evidence within its own control. Speedway provides no authority on which the Court could find that this amounts to evidence spoliation, and the Court therefore rejects Speedway's argument.

## IV. Attorney Fees and Costs

Finally, Speedway seeks attorney fees and costs. The Court has discretion to award fees and costs to the prevailing party in an ADA case under 42 U.S.C. § 12205. *See also Quasius v. Schwan Food Co.*, Civil No. 08-575, 2010 WL 3218591, at *1 (D. Minn. Aug. 13, 2010) (finding that a prevailing ADA defendant is entitled to attorney fees in "very narrow circumstances"). Because the Court denies Speedway's motion for summary judgment as to the claims concerning the curb ramp landing and Speedway's

---

[7] As an alternative, Speedway seeks an adverse-inference instruction. The Court need not consider potential jury instructions at this stage in the litigation. *See Hallmark Cards, Inc. v. Murley*, 703 F.3d 456, 460-61 (8th Cir. 2013).

policies, practices, and procedures, the Court denies Speedway's request for fees and costs without prejudice.

## V.    Results

Speedway seeks dismissal of Weisen's claims with prejudice. Nevertheless, "[w]hen a federal court lacks subject-matter jurisdiction over a removed claim, it 'must remand it to state court' even if, as is true here, the removed claim is one arising under federal, not state, law." *Hillesheim v. Holiday Stationstores, Inc.*, 903 F.3d 786, 791-92 (8th Cir. 2018) (cleaned up) (quoting *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1033 (8th Cir. 2014)); *see also* 28 U.S.C. § 1447(c). Weisen's Summons and Complaint identified the Tenth Judicial District of the State of Minnesota, Washington County. Speedway then removed the action to federal court. Accordingly, where Weisen lacks standing and where Speedway has mooted Weisen's claims, the Court lacks subject-matter jurisdiction and remands the claims to the Tenth Judicial District of the State of Minnesota, Washington County.

# CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendant's Motion for Summary Judgment [ECF No. 67] is GRANTED IN PART and DENIED IN PART.

   a. Summary Judgment is GRANTED for Weisen's claims as they relate to the adjacent surface at the transition from the curb ramp to the street. These claims are DISMISSED WITH PREJUDICE.

   b. Summary Judgment is GRANTED for Weisen's claims as they relate to the accessible parking space and access aisle, the running slope of the curb ramp, the cross slope of the curb ramp, the slope of the curb ramp landing, the curb ramp flares, the operable parts of the gas pump, the self-service shelf for condiments and lids, the maneuvering clearance of the toilet compartment, the toilet paper dispenser, and the bathroom mirror. These claims are REMANDED to the Tenth Judicial District of the State of Minnesota, Washington County.

      i. The Clerk of Court shall send a certified copy of this Order to the Clerk of the Tenth Judicial District of the State of Minnesota, Washington County.

   c. Summary Judgment is DENIED for Weisen's claims as they relate to the size of the curb ramp landing and Speedway's policies, procedures, and practices.

2. Plaintiff's Motion for Partial Summary Judgment [ECF No. 74] is DENIED.

3. Defendant's Motion to Exclude Expert Testimony [ECF No. 82] is GRANTED.

Dated: June 29, 2021

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge